******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# STATE OF CONNECTICUT *v.* SHARDEL RAGIN (SC 21044)

Mullins, C. J., and McDonald, D'Auria, Ecker,
Alexander, Dannehy and Bright, Js.

*Syllabus*

Convicted of murder and criminal possession of a pistol in connection with the shooting death of the victim, the defendant appealed to this court. After learning that the defendant may have been involved in the victim's murder, the police served a search warrant on T Co., the defendant's cell phone service provider, seeking information relating to the defendant's cell phone, including call-identifying information and cell site location information for the two and one-half week period immediately following the murder. Because T Co. generated its records using Coordinated Universal Time, rather than Eastern Daylight Time, as its time standard, it produced data that corresponded not only to the two and one-half week period requested but also to the four hour period immediately preceding the approximate time of the murder. Prior to trial, the defendant moved to suppress the cell phone records, claiming that the search warrant lacked probable cause and particularity, was overbroad, and that the additional four hours of data that T Co. voluntarily produced was outside the scope of the warrant. The trial court denied the motion, and, at trial, the state relied on the defendant's cell phone records, as well as witness testimony, to place the defendant in the area of the shooting. On appeal, the defendant claimed, inter alia, that the trial court had improperly denied his motion to suppress his cell phone records because the search warrant lacked the probable cause and sufficient particularity necessary to comport with the federal and state constitutions and that he had a reasonable expectation of privacy in his call-identifying and cell site location information. *Held*:

The trial court properly denied the defendant's motion to suppress his cell phone records.

The defendant could not prevail on his claim that the warrant lacked probable cause for cell phone records spanning the two and one-half week period following the murder, as the facts in the warrant affidavit, together with the reasonable inferences drawn therefrom, provided a sufficient basis for the issuing judge to conclude that probable cause existed to obtain the defendant's call-identifying and cell site location information for the time period requested.

Specifically, the affidavit in support of the warrant established probable cause to believe that the defendant had committed the murder, that he had used his cell phone shortly before the murder, that the police were still searching for his cell phone when they applied for the warrant, and that the data contained in the phone would assist in the police investigation of the victim's murder and in any subsequent prosecution.

Contrary to the defendant's claim, the warrant was sufficiently particular insofar as the time frame specified therein reasonably cabined the scope of the search, even though it was silent with respect to the applicable time zone.

The warrant identified a specific start date and end date and the relevant year, and there was no evidence to indicate that the police were aware that T Co. would rely on a time zone other than Eastern Daylight Time for purposes of generating the requested information.

There was no merit to the defendant's claim that the four hours of call-identifying and cell site location information corresponding to the time frame immediately preceding the time frame requested in the warrant should have been suppressed.

This court assumed without deciding that T Co. was not acting at the behest of the state when it turned over the additional four hours of data at issue and concluded that, when a third-party provider, such as T Co., voluntarily supplies the state with information exceeding the scope of a warrant and the information is of the type in which the defendant has a legitimate expectation of privacy, the state's retention and subsequent use of that information, in the absence of an additional warrant, is properly subject to constitutional challenge.

Nevertheless, application of the exclusionary rule, which bars the state from introducing evidence that is obtained in violation of the federal or state constitution, was not warranted under the circumstances of the present case.

It was far from certain under the federal constitution that the defendant possessed a legitimate expectation of privacy in the four hours of call-identifying and cell site location information that was voluntarily produced, and the defendant failed to adequately brief his claim under the state constitution.

Moreover, it was evident from the warrant that the police had probable cause to seize the additional four hours of call-identifying and cell site location information at issue, and suppression of that information would not meaningfully advance the deterrent purposes underlying the exclusionary rule, as there was no evidence that the police had engaged in deliberate, reckless, or otherwise improper conduct in obtaining the information that it sought.

Furthermore, even if T Co.'s production of the additional four hours of data was attributable to the state, the production of that data reflected a reasonable response to a valid warrant.

Argued February 2—officially released June 30, 2026

*Procedural History*

Substitute information charging the defendant with the crimes of murder, carrying a pistol without a permit, illegal possession of a weapon in a motor vehicle, and criminal possession of a pistol, brought to the Superior Court in the judicial district of Bridgeport, where the court, *Dayton, J.*, denied the defendant's motion to suppress certain evidence; thereafter, the case was tried to the jury before *Pavia, J.*; subsequently, the court, *Pavia*,

*J.*, granted the defendant's motion for a judgment of acquittal as to the charges of carrying a pistol without a permit and illegal possession of a weapon in a motor vehicle; verdict and judgment of guilty of the crimes of murder and criminal possession of a pistol, from which the defendant appealed to this court. *Affirmed.*

*Lisa J. Steele*, assigned counsel, for the appellant (defendant).

*Rocco A. Chiarenza*, senior assistant state's attorney, with whom, on the brief, were *Joseph Corradino*, state's attorney, and *Mary-Caitlin Harding*, assistant state's attorney, for the appellee (state).

*Opinion*

DANNEHY, J. The defendant, Shardel Ragin, appeals directly to this court after a jury found him guilty of murder in violation of General Statutes § 53a-54a (a) and criminal possession of a pistol in violation of General Statutes (Rev. to 2017) § 53a-217c (a) (1). He claims that the trial court improperly denied his motion to suppress call-identifying information and cell site location information (CSLI) obtained pursuant to a search warrant executed on his cell phone service provider. The defendant argues that the search warrant lacked the probable cause and sufficient particularity necessary to comport with both the United States and Connecticut constitutions and that he had a reasonable expectation of privacy in his call-identifying information and CSLI. We affirm the judgment of conviction.

The jury reasonably could have found the following facts. On the night of April 19, 2017, the defendant and his wife visited Tiago's Bar and Grill in downtown Bridgeport. At the bar that evening was the defendant's acquaintance, Tyrelle Noblin, who was there celebrating his friend's birthday. Among those present with Noblin was Lou Geneus, a friend of the defendant who was dating the sister of Noblin's fiancée. At around 10:24 p.m., the defendant and his wife left the bar and headed to their

home in Bridgeport. At around 11:37 p.m., Geneus left the bar and headed to his home. Also present at the bar that evening, although not associated with the birthday celebration, were the victim, Max Antione, and his friend, Michael Peters.

After the defendant and Geneus left, Noblin remained at the bar for a while longer. At some point, Noblin called and texted the defendant to determine whether the defendant would return to the bar to meet him. When Noblin later exited the bar around 12:29 a.m., he observed the defendant sitting in a black car parked on a side street next to the bar. Noblin approached the car, briefly spoke with the defendant, and then got into the car. Once inside, he noticed the defendant had a black semiautomatic firearm resting on his lap. When Noblin asked the defendant why he had the weapon, the defendant responded that "they gonna get what they got coming to them." Noblin testified that the defendant explained to him that "they" had previously shot the defendant and his wife in Stamford. Once the victim and Peters exited the bar, and with Noblin still in the car, the defendant reversed the car, drove toward them, and began firing his weapon. Peters ducked and took cover beside a car parked on the street. The victim attempted to flee, but, as he was running away, he was shot by the defendant and was pronounced dead at the scene shortly thereafter.

One week later, Noblin contacted the Bridgeport Police Department and informed them that the defendant was involved in the shooting. Based on the information that Noblin provided, on May 3, 2017, the police sought a search warrant for the defendant's home and vehicle, seeking, among other items, the defendant's cell phone. On May 6, 2017, the police executed the search warrant on the defendant's home and car but did not find the phone. Thereafter, on May 8, 2017, the police sought a search warrant for the defendant's T-Mobile cell phone records. The search warrant application sought telephone records, subscriber information, call-identifying information, text messaging data, and any information relating to cell

site activation or geographical positioning from April 20 to May 8, 2017.[1] Attached to the search warrant application was an affidavit signed by Detective Robert G. Winkler, which summarized Noblin's statements to the police. The affidavit stated that Noblin had been present at the bar prior to the shooting and had communicated with the defendant on his phone while he was there. It further stated that Noblin left the bar alone around 12:30 a.m. on April 20, at which time he approached the defendant's vehicle parked outside, entered it, and observed a firearm on the defendant's lap. The affidavit indicated that Noblin observed the defendant fire his weapon from the vehicle and confirmed that the victim was pronounced dead at 12:44 a.m. on April 20. It also referenced the search of the defendant's home and vehicle on May 6 and the failure to locate his cell phone.

A judge issued a search warrant for the cell phone records, and it was later served on T-Mobile. Pursuant to the warrant, T-Mobile produced the defendant's call-identifying information and CSLI for the period from April 20 to May 8, 2017, Coordinated Universal Time (UTC). Because T-Mobile produced its records using UTC, rather than Eastern Daylight Time (EDT), the production included data that corresponded to the four hour period immediately preceding midnight on April 20 in the local time zone—specifically, 8 p.m. to 12 a.m. EDT on April 19, 2017.

The cell phone records revealed that the defendant was present at his home in Bridgeport before receiving a call from Geneus at 11:41 p.m. on April 19, 2017. After the

---

[1]The search warrant application stated in relevant part: "The undersigned, being duly sworn, complains on oath that the undersigned has probable cause to believe that certain property, to wit: Phone records of T-Mobile cellular number 203-xxx-xxxx, to include telephone records, subscriber information and call-identifying information from April 20, 2017 [through] the current date [May 8, 2017]. Any information regarding cell site activation, geographical positioning (GPS) or any other information that would be able to pinpoint the cell phone's location during calls is also requested. Any text messaging data is also requested." In the interest of privacy, we have redacted the defendant's cell phone number.

call, the cell phone records indicate that, from 11:43 to 11:52 p.m., the defendant was moving toward the location of the bar. The records further reveal that, after the defendant was in the vicinity of the bar, there was no user generated activity on the defendant's phone between 11:52 p.m. and 1 a.m. on April 20, which indicated that the phone was turned off at some point during this time period. At 1 a.m., the phone was turned back on, and the location data reveals that, at 1:30 a.m., the defendant was in the vicinity of Geneus' Bridgeport home before returning to the area near his own home at 2:05 a.m.

Before trial, the defendant moved to suppress his cell phone records, and all corresponding evidence obtained, on the basis that the search warrant lacked probable cause and particularity, and was overbroad. At the hearing on the motion, defense counsel also asserted that, because the defendant's cell phone service provider maintained and produced its records in UTC, it had provided an additional four hours of information that should be suppressed as outside the scope of the warrant. The trial court denied his motion, finding that there was probable cause, that the warrant was sufficiently particular, and that it was not overbroad. Additionally, the trial court found that T-Mobile was not acting as a state actor when it provided additional material from the night of April 19, 2017, that was outside the scope of the warrant and that there was no evidence to indicate that the police knew the T-Mobile records would be provided in UTC and, therefore, would provide the police with more information than they had requested in the warrant application.

At trial, the state introduced the defendant's cell phone records alongside Geneus' cell phone records and used the defendant's call-identifying information and CSLI in conjunction with Noblin's testimony to place the defendant in area of the shooting. The jury found the defendant guilty of murder and criminal possession of a pistol.[2] The trial court rendered judgment in accordance

---

[2]After the state presented its case, defense counsel moved for a judgment of acquittal. The trial court granted this motion only as to the

with the jury's verdict and sentenced the defendant to fifty years of imprisonment. This direct appeal followed. See General Statutes § 51-199 (b) (3).

The defendant claims that the trial court improperly denied his motion to suppress his cell phone records because the search warrant lacked the probable cause and particularity necessary to comport with both the United States and Connecticut constitutions,[3] that he had a reasonable expectation of privacy in his cell phone's call-identifying information, and that T-Mobile produced documents beyond the scope of the warrant.

I

We begin with the defendant's claim that the warrant lacked probable cause for the period of April 20 to May 8, 2017. "Whether a warrant satisfies the constitutional requirements of probable cause and particularity presents a question of law over which our review is plenary." *State* v. *Johnson*, 354 Conn. 96, 122, 349 A.3d 260 (2026).

charges of carrying a pistol without a permit in violation of General Statutes (Rev. to 2017) § 29-35 (a) and illegal possession of a weapon in a motor vehicle in violation of General Statutes § 29-38 (a).

[3] The defendant argues that article first, § 7, of the Connecticut constitution provides greater protection than the federal constitution for call-identifying information and CSLI. He asks this court to conclude that, under our state constitution, the police must establish a nexus between the use of a suspect's phone and the crime under investigation to establish probable cause. At oral argument before this court, the defendant's appellate counsel specifically argued that this higher probable cause under the state constitution would apply to both call-identifying information and CSLI, and require that the police show a nexus between the crime and the use of the cell phone. We rejected this claim under the federal constitution in *State* v. *Evans*, 352 Conn. 794, 818, 339 A.3d 1138 (2025), and, recently, in *State* v. *Johnson*, 354 Conn. 96, 121, 349 A.3d 260 (2026), reiterated that the federal and state probable cause standards are the same. Because the defendant does not articulate why the state constitution requires a different standard of probable cause that would provide greater protection for call-identifying information and CSLI, we decline to address the defendant's state constitutional claims as inadequately briefed. See, e.g., *Burton* v. *Dept. of Environmental Protection*, 337 Conn. 781, 804–805, 256 A.3d 655 (2021) (claim was inadequately briefed when appellant failed to provide any meaningful analysis).

"Both the fourth amendment to the United States constitution and article first, § 7, of the Connecticut constitution prohibit the issuance of a search warrant in the absence of probable cause. . . . Probable cause to search [under both constitutions] is established if there is probable cause to believe that (1) . . . the particular items sought to be seized are connected with criminal activity or will assist in a particular . . . conviction . . . and (2) . . . the items sought to be seized will be found in the place to be searched. . . . There is no uniform formula to determine probable cause—it is not readily, or even usefully, reduced to a neat set of legal rules—rather, it turns on the assessment of probabilities in particular factual contexts . . . . Probable cause requires less than proof by a preponderance of the evidence . . . . The task of the issuing [judge] is simply to make a practical, [commonsense] decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." (Internal quotation marks omitted.) *State* v. *Evans*, 352 Conn. 794, 816–17, 339 A.3d 1138 (2025); see also *State* v. *Johnson*, supra, 354 Conn. 121.

"[A] search warrant satisfies the fourth amendment's particularity requirement if it identifies the place or thing for which there is probable cause to search with sufficient definiteness to preclude indiscriminate searches." (Internal quotation marks omitted.) *State* v. *Correa*, 353 Conn. 338, 359–60, 341 A.3d 910 (2025). We have recognized that "[t]he description of items to be seized in a warrant need only be as specific as the circumstances and the nature of the activity under investigation permit," and, "[i]n construing the terms of a warrant, the circumstances and nature of the activity under investigation dictate a practical margin of flexibility." (Internal quotation marks omitted.) *State* v. *Montgomery*, 254 Conn. 694, 704, 759 A.2d 995 (2000).

According to the defendant, the state offered no justification for obtaining his phone records for the two and one-half week period following the victim's murder. We disagree. The affidavit established probable cause to believe that the defendant had committed the murder,

that he had used his cell phone shortly before the crime, and that the police were still searching for his cell phone to seize. In particular, the affidavit recounted Noblin's statements to the police, including that he observed the defendant in possession of a firearm on April 20, 2017, that the defendant fired the weapon from the driver's side window of his vehicle, and that the defendant drove away immediately after the shooting. Noblin also confirmed the defendant's cell phone number, which was corroborated by probation records, and reported that he had communicated with the defendant shortly before the shooting.

The affidavit further indicated that, on May 6, 2017, the police executed a search of the defendant's residence and vehicle and specifically sought his cell phone but did not locate it. In light of that unsuccessful search, there was probable cause to believe that the phone remained outstanding and that its location data and call-identifying information would assist the police not only in locating the device (which likely contained evidence of the crime) but also in the investigation and any subsequent prosecution. Accordingly, these facts, together with the reasonable inferences drawn therefrom, provided a sufficient basis for the issuing judge to conclude that probable cause existed to obtain the defendant's call-identifying information and CSLI for the period from April 20 through May 8, 2017. See *State* v. *Evans*, supra, 352 Conn. 820–21, 825.[4]

The defendant also contends that the warrant is not sufficiently particular because it did not give the cell

---

[4]The defendant initially challenged whether probable cause existed to issue the warrant for CSLI. Subsequent to the filing of his initial brief, we decided *State* v. *Evans*, supra, 352 Conn. 794, which set forth the probable cause standard for the search of cell phone CSLI. Id., 819. The defendant concedes that *Evans* largely resolves his federal constitutional challenge on this ground. The defendant nevertheless argues that he had a reasonable expectation of privacy in his CSLI under the federal constitution. Under the facts of the present case, we do not disagree. The warrant authorized the police to obtain eighteen days of CSLI. The United States Supreme Court in *Carpenter* v. *United States*, 585 U.S. 296, 138 S. Ct. 2206, 201 L. Ed. 2d 507 (2018), made clear that

phone service provider specific time parameters for the records. Specifically, the defendant argues that requesting cell phone records for a specific date range, without an enumerated time zone, forces the cell phone service provider to make inferences regarding when a day begins and ends for purposes of document production.[5] The defendant contends that our decision in *State* v. *Smith*, 344 Conn. 229, 252, 278 A.3d 481 (2022), and several federal cases require that search warrants for cell phone records specify the applicable time zone. According to the defendant, because the cell phone service provider had to interpret what it was required to produce, the warrant was ambiguous and therefore lacked the necessary particularity under the fourth amendment. We disagree.

The defendant's contention that our decision in *State* v. *Smith*, supra, 344 Conn. 229, requires that a search warrant include a specific time zone to be sufficiently particular is not supported by that decision. There, we explained that one of the warrants at issue "included no time parameters to cabin the scope of the search but, rather, allowed for the entire contents of the phone to be searched for all time." Id., 252. We concluded "that the search warrant did not comply with the particularity requirement because it did not sufficiently limit the

the third-party doctrine does not apply to retrospective collection of CSLI for periods of at least seven days and that, therefore, a warrant is required. Id., 309–10, 317 and n.3; see *State* v. *Tyus*, 342 Conn. 784, 803–804 and n.12, 272 A.3d 132 (2022) (this court assumed without deciding that collection of CSLI for period of three days was nonetheless search because of sensitive nature of that information). The defendant also makes an ambiguous claim without any analysis that a person has a reasonable expectation of privacy in CSLI that is greater under our state constitution than under the federal constitution. We decline to address this constitutional claim as inadequately briefed. See footnote 3 of this opinion.

[5]The state argues that the defendant's claim that the warrant is not sufficiently particular because it lacked a specific starting time was not presented in the trial court and that the defendant failed to develop an evidentiary record to support his claim. Upon a review of the record, it is clear that the defendant raised the issue of the additional four hours the police received based on the difference in time zones when challenging the overbreadth of the search warrant. As such, we address his argument.

search of the contents of the cell phone by description of the areas within the cell phone to be searched, or by a time frame reasonably related to the crimes." Id. The decision, as with our other recent decisions upholding search warrants for call-identifying information or CSLI from a cell phone service provider for a limited period of days, was silent with respect to time zones. See *State* v. *Johnson*, supra, 354 Conn. 124–25; *State* v. *Evans*, supra, 352 Conn. 813; see also *State* v. *Smith*, supra, 258. As long as the time frame in the warrant reasonably cabined the scope of the search, we have concluded that the warrant was sufficiently particular. See, e.g., *State* v. *Johnson*, supra, 125.

As to the federal decisions that the defendant cites, none is pertinent to the issue with which we are presented. For example, the defendant relies on *United States* v. *Fisher*, 56 F.4th 673, 677 (9th Cir. 2022), and *United States* v. *Trader*, 981 F.3d 961, 965 (11th Cir. 2020), cert. denied, U.S. , 142 S. Ct. 296, 211 L. Ed. 2d 139 (2021), as examples of cases involving warrants that include the relevant time zone. In those cases, the search warrant affidavits referenced reports received from a social media website or messaging application in the course of investigations related to the exploitation of children and child pornography. *United States* v. *Fisher*, supra, 677; *United States* v. *Trader*, supra, 965. Although the reports referenced in the affidavits included a specific time zone, the search warrants themselves did not include a time zone in describing the items to be seized, and the courts were not presented with the question of whether a specific time zone was necessary to satisfy the particularity requirement of the fourth amendment. See *United States* v. *Fisher*, supra, 676–78; *United States* v. *Trader*, supra, 964–65.

On the basis of our review of the warrant in the present case, we conclude that it was sufficiently particular. The warrant requests cell phone records from "April 20, 2017 [through May 8, 2017]." It identifies a specific start date, end date, and the relevant year. The search warrant was

executed by the Bridgeport police, who operate in EDT, on T-Mobile's custodian of records in New Jersey, who also operates in that time zone. There is no evidence to indicate that the Bridgeport police were aware that a search warrant executed on a private entity located in the same time zone would result in their receipt of information pertaining to a time zone other than EDT.[6] Given these circumstances, the inclusion of specific starting and ending numeric dates was sufficiently particular to provide T-Mobile with a precise range of requested information, and the trial court properly denied the defendant's motion to suppress.[7]

II

The defendant asserts that, even if the warrant was sufficiently particular, the four hours of call-identifying information and CSLI from April 19, 2017, nevertheless should have been suppressed. The defendant challenges the trial court's determination that T-Mobile was not acting at the behest of the state and that it voluntarily

---

[6]The defendant specifically limited his challenge to the four corners of the warrant and never sought a hearing to try to establish that the Bridgeport police intentionally omitted material information or were aware that T-Mobile maintained records in UTC.

[7]The defendant also claims that he had a reasonable expectation of privacy in his call-identifying information contained in the cell phone records provided by T-Mobile. The defendant challenges the continued viability of the third-party doctrine under both the federal and state constitutions. The United States Supreme Court has explained that the third-party doctrine promulgated in *Smith* v. *Maryland*, 442 U.S. 735, 744, 99 S. Ct. 2577, 61 L. Ed. 2d 220 (1979), remains applicable, as telephone call logs "reveal little in the way of 'identifying information.'" *Carpenter* v. *United States*, 585 U.S. 296, 314, 316, 138 S. Ct. 2206, 201 L. Ed. 2d 507 (2018). Other courts have rejected both federal and state constitutional claims that the third-party doctrine is no longer applicable to call detail records, notwithstanding recent technological changes. See *Commonwealth* v. *Lepage*, 494 Mass. 67, 77, 232 N.E.3d 1196 (2024). We need not address these claims in the present case, however, because the police obtained a warrant authorizing the acquisition of the defendant's cell phone records, including call-identifying information. See *State* v. *Lasaga*, 269 Conn. 454, 470–71, 848 A.2d 1149 (2004) (declining to address whether reasonable expectation of privacy existed for files on workplace computer because police had obtained warrant supported by probable cause).

produced the additional four hours of records. According to the defendant, the police effectively seized records outside the scope of the warrant, and those records, therefore, should be suppressed. In the alternative, the defendant argues that, once law enforcement discovered that T-Mobile had produced records corresponding to the additional four hour period, the police were required to segregate those records and to obtain a separate warrant before retaining or using them. The state, on the other hand, argues that the defendant's claim challenges the execution of the warrant, not its validity. The state contends that the defendant's claim fails because he limited his motion to suppress to the four corners of the warrant, did not seek an evidentiary hearing regarding the manner in which the warrant was executed, and, in any event, the exclusionary rule should not be applied to evidence voluntarily produced by a private party. For the reasons that follow, we need not decide whether T-Mobile acted as an agent of the state when it produced the four hours of call-identifying information and CSLI at issue in this case because, regardless of its status when it did so, the result would be the same: the application of the exclusionary rule is not warranted under these circumstances.

The fourth amendment protects persons from unreasonable searches and seizures by the federal government; see, e.*g.*, *Coolidge* v. *New Hampshire*, 403 U.S. 443, 454–55, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); and is made applicable to state action by the fourteenth amendment. See, e.*g.*, *Mapp* v. *Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). Accordingly, we have applied the exclusionary rule to bar the government from introducing at trial evidence that it obtained in violation of the fourth amendment. See, e.*g.*, *State* v. *Brown*, 331 Conn. 258, 275, 202 A.3d 1003 (2019). The rule's primary purpose is "to deter future unlawful police conduct and thereby effectuate the guarantee of the [f]ourth [a]mendment against unreasonable searches and seizures . . . ." (Internal quotation marks omitted.) *State* v. *Boyd*, 295 Conn. 707, 729, 992 A.2d 1071 (2010), cert. denied, 562

U.S. 1224, 131 S. Ct. 1474, 179 L. Ed. 2d 314 (2011). A search or seizure conducted by a private party not acting as an agent or instrumentality of the state, however, does not violate the fourth amendment and "does not deprive the government of the right to use evidence that it has acquired lawfully." (Internal quotation marks omitted.) *State* v. *Betts*, 286 Conn. 88, 96, 942 A.2d 364 (2008); see id., 93–94 (fourth amendment was not violated when defendant's fiancée independently provided responding police with incriminating evidence).

Certain searches under the fourth amendment may require the assistance of private parties with the requisite technical ability to facilitate the execution of the search warrant. See, e.g., *Bellville* v. *Northboro*, 375 F.3d 25, 28, 33 (1st Cir. 2004) (upholding search when private citizens assisted police in identifying technical computer components); *United States* v. *Bach*, 310 F.3d 1063, 1066 (8th Cir. 2002) (upholding search of Internet accounts executed by Yahoo! employees outside presence of police), cert. denied, 538 U.S. 993, 123 S. Ct. 1817, 155 L. Ed. 2d 693 (2003). In the context of cell phone records, the state often relies on private cell phone service providers to provide the materials that are the subject of the search warrant. See, e.g., *State* v. *Smith*, supra, 344 Conn. 252 (T-Mobile searched defendant's records and provided information subject to search warrant); see also *People* v. *Riche*, 225 App. Div. 3d 30, 32, 34–35, 205 N.Y.S.3d 201 (upholding search when T-Mobile custodian in New Jersey provided cell phone information to police in New York pursuant to valid warrant), appeal denied, 42 N.Y.3d 940, 242 N.E.3d 680, 217 N.Y.S.3d 894 (2024). Although involvement of a private party is often required to effectuate a search warrant of cell phone records, that private party is not necessarily acting as an agent of the state when it independently provides information outside the scope of an otherwise valid search warrant.

We have stated that "[t]here is no bright line test" for determining when a private citizen or entity is acting

as an agent of the state; *State* v. *Alexander*, 197 Conn. 180, 183, 496 A.2d 486 (1985); and that "[t]he issue of agency, even in a constitutional context, is primarily a question of fact . . . ." (Citations omitted.) Id., 185. In the fourth amendment context, we have examined whether the police placed the private party in a position to find or receive the incriminating evidence, whether there was a police initiated, preexisting plan, or whether the private party was self-motivated or acting pursuant to a reward. See, e.g., *State* v. *Betts*, supra, 286 Conn. 101.

In the present case, the trial court concluded that T-Mobile was not acting at the behest of the state when it produced the four hours of records at issue. The court further noted that nothing in the record suggested the police had engaged in conduct designed to exploit a temporal ambiguity in the warrant to obtain additional information. We need not resolve whether these conclusions were correct, however, because the outcome of the present case is the same either way.

Even if we assume, as the trial court determined, that T-Mobile was not acting at the behest of the state when it turned over the additional four hours of records at issue, this does not end the inquiry. Although the state lawfully came into possession of the additional records, a distinct question remains: whether the state may retain and subsequently use that additional information in a later criminal prosecution. We conclude that, when a third-party provider enlisted by the state to execute a technical search voluntarily provides information exceeding the scope of the warrant and that information is of a type in which the defendant retains a legitimate expectation of privacy, the state's retention and subsequent use of that information, absent a second warrant, is properly subject to constitutional challenge. Our conclusion that law enforcement must generally secure a second warrant before information of this nature may be retained and used strikes the appropriate balance between legitimate law enforcement interests and an individual's rights, particularly as the scope of cognizable privacy interests

under the fourth amendment continues to develop in the digital age. See, e.*g.*, *Riley* v. *California*, 573 U.S. 373, 385–86, 134 S. Ct. 2473, 189 L. Ed. 2d 430 (2014); see also *Walter* v. *United States*, 447 U.S. 649, 654–56, 100 S. Ct. 2395, 65 L. Ed. 2d 410 (1980).

Although the state did not obtain a second warrant for the additional four hours of data produced by T-Mobile in the present case, we conclude that applying the exclusionary rule under these circumstances is not warranted. As an initial matter, it is far from certain under the federal constitution that the defendant possessed a legitimate expectation of privacy in only four hours of CSLI. See *Carpenter* v. *United States*, 585 U.S. 296, 310 n.3, 138 S. Ct. 2206, 201 L. Ed. 2d 507 (2018) ("[W]e need not decide whether there is a limited period for which the [g]overnment may obtain an individual's historical CSLI free from [f]ourth [a]mendment scrutiny, and if so, how long that period might be. It is sufficient for our purposes . . . to hold that accessing seven days of CSLI constitutes a [f]ourth [a]mendment search."). And, as we previously explained, the defendant failed to adequately brief such claim under our state constitution. See footnote 4 of this opinion. It is evident from the warrant in the present case that the police, who were in lawful possession of the additional four hours of call-identifying information and CSLI, had probable cause to seize those records from April 19, 2017. See *State* v. *Jones*, 320 Conn. 22, 69, 128 A.3d 431 (2015) ("when police have lawful access to an item for which they have probable cause to believe is evidence of a crime, it is not unreasonable for them to seize that item without a warrant"). The supporting affidavit set forth substantial facts establishing that the cell phone records would contain evidence linking the defendant to the murder under investigation, including evidence that Noblin and the defendant had spoken by telephone while Noblin was at the bar shortly before the victim exited, during a time period encompassing the evening of April 19 through approximately 12:30 a.m. on April 20. Suppression of the additional four hours of call-identifying information and CSLI in the present case

would not meaningfully advance the deterrent purposes underlying the exclusionary rule, as there is no evidence that law enforcement engaged in deliberate, reckless, or otherwise improper conduct in obtaining the records. See, e.g., *State* v. *Brown*, supra, 331 Conn. 275. As a result, we conclude that the trial court properly denied the defendant's motion to suppress his cell phone records.

Alternatively, even assuming that T-Mobile's production of the four hours of call-identifying information and CSLI from April 19, 2017, was attributable to the state, we conclude that the production reflected a reasonable response to a valid warrant. As noted, the warrant did not specify a time zone, and it was reasonably susceptible to an interpretation permitting production using UTC. See, e.g., *United States* v. *Ray*, 141 F.4th 129, 137 (4th Cir. 2025). On that assumption, suppression would not meaningfully serve the deterrent purposes underlying the exclusionary rule, as the record contains no evidence suggesting that law enforcement acted deliberately, recklessly, or otherwise improperly in obtaining the records. See *State* v. *Correa*, supra, 353 Conn. 359–60; *State* v. *Brown*, supra, 331 Conn. 275.

As a result, and without deciding whether T-Mobile was acting as an agent of the state when it voluntarily produced the four hours of call-identifying information and CSLI from April 19, 2017, we conclude that the trial court properly denied the defendant's motion to suppress his cell phone records.

The judgment is affirmed.

In this opinion the other justices concurred.